IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD DEAN LAUCK, | CASE NO. 3:24-CV-00534-JJH |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ANGELA STUFF,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

INTRODUCTION

Representing himself, Petitioner Ronald Lauck, a prisoner in state custody, applied for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1 at PageID 15). The District Court has jurisdiction under § 2254(a) and the matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Apr. 25, 2024). On August 8, 2024, then-Respondent Warden Kenneth Black, as Warden of the Richland Correctional Institution (hereinafter, the State), filed the Return of Writ. (ECF #7).

On September 9 and 25, 2024, Mr. Lauck filed duplicative motions to expand the record. (ECF #9 and 10). On September 30, 2024, Mr. Lauck submitted his Traverse (ECF #12) and attached the records he previously moved to add (*see* ECF #12-1 and 12-2). I thus denied the motions as moot on November 18, 2024. (ECF #16).

---

[1]     I previously substituted Warden Stuff as the proper respondent under Fed. R. Civ. P. 25(c) and Rule 2(a) of the Habeas Rules. (*See* ECF #16 at PageID 724, n.1).

For the reasons that follow, I recommend the District Court **DISMISS** as procedurally defaulted the portion of Ground Three arguing ineffective assistance of counsel; **DENY** Ground One, Ground Two, and the remainder of Ground Three as meritless; and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Lauck a certificate of appealability (COA) on all grounds.

## PROCEDURAL HISTORY

### A.    State court factual findings

The Ohio Court of Appeals, Third Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Lauck rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Third District determined:

> {¶1} Defendant-appellant Ronald D. Lauck ("Lauck") brings this appeal from the judgment of the Court of Common Pleas of Hancock County convicting him of one count of intimidation. On appeal, Lauck claims that the judgment is not supported by sufficient evidence and is against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

> {¶2} On August 23, 2020, officers were dispatched to Lauck's home after a report of an altercation between Lauck's son, Jase, and his girlfriend. Deputy Justin Ritter ("Ritter") was the first on the scene and after speaking with Lauck and the victim, began to look for Jase. At that time, Lauck was "very cordial". Ritter was informed that Jase had run into the cornfield. Multiple officers began searching the area for Jase and Ritter returned to the area to speak with the alleged victim and to see if Jase returned.

> {¶3} While conducting the investigation, Ritter noticed that Lauck had become intoxicated and more argumentative. The interactions between the two became more hostile which resulted in Ritter telling Lauck to stay back and to stop interrupting the investigation. At one point, Lauck told his daughter to get rid of Ritter. Lauck went to the garage and came out on an ATV, driving it at a "rapid speed" towards where Ritter was standing. Ritter interpreted this as a possible threat, stepped closer to the tree, and "dropped the hood retention of [his] holster." Ritter instructed Lauck to get off the ATV and Lauck complied. Ritter then instructed Lauck to stay on the front porch to not interrupt the investigation.

2

{¶4} A few minutes later, Ritter heard a noise inside the garage and saw Lauck standing towards the rear of it. Ritter started walking to the garage to see what Lauck was doing. As he approached, Ritter saw that Lauck was holding a shotgun. Ritter reported that Lauck had a firearm and then sought cover. While moving towards cover, Ritter heard the shotgun being racked. Then Ritter heard the shotgun being fired. Both Ritter and Deputy Kris Otto ("Otto") reported "shots fired". Once Ritter was in a position of cover, he pulled his duty weapon and aimed towards the garage. Ritter saw Lauck with the shotgun and heard him racking the shotgun again. Ritter saw that Lauck had the gun in a "high-ready position", and, fearing for his life, fired two shots towards Lauck. Ritter then reported that Lauck had fired one shot and he had fired two shots. Once Ritter had fired towards Lauck, Lauck dropped the shotgun and Ritter commanded him to walk towards him.

{¶5} By this time Otto had arrived on the scene and saw Lauck standing in the drive with his hands up and the shotgun lying on the ground. Otto also began yelling commands for Lauck to turn away, keep his hands up, and get on the ground. Otto then tackled Lauck to the ground. Lauck kept repeating that he did not mean to shoot the gun. Otto noted that Lauck appeared intoxicated and Lauck admitted to having been drinking.

{¶6} On July 6, 2021, the Hancock County Grand Jury indicted Lauck on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the first degree, and one count of intimidation in violation of R.C. 2921.03(A), a felony of the third degree. Both counts contained firearm specifications. A bench trial was held from February 14-16, 2022. On March 2, 2022, the trial court held a hearing to announce the verdicts. The trial court found Lauck not guilty of the felonious assault and the firearm specification. The trial court found Lauck guilty of intimidation and the firearm specification.

{¶7} On March 29, 2022, the trial court conducted a sentencing hearing. The trial court then sentenced Lauck to a three-year mandatory prison term for the firearm specification and a twenty-four month prison term to be served consecutive to the mandatory term.

(ECF #7-1 at PageID 143-45 (citations and footnote omitted); *see also State v. Lauck*, No. 5-22-07, 2023 WL 3161901, at *1-2 (Ohio Ct. App. May 1, 2023), *appeal not allowed,* 214 N.E.3d 591 (Ohio 2023) (table)).

**B.**     **Direct appeal**

On April 8, 2022, through new counsel, Mr. Lauck timely appealed his conviction to the

Third District. (ECF #7-1 at PageID 78). In one assignment of error, he challenged the sufficiency

and the manifest weight of the evidence:

> Appellant's conviction for intimidation is unsupported by sufficient evidence in
> violation of the Due Process Clauses of the U.S. Constitution and the Ohio
> Constitution, and is against the manifest weight of the evidence.
>
> Issue One: The State failed to prove an "unlawful threat of harm"
>
> Issue Two: The State failed to prove intent

(*See id.* at PageID 87). On May 1, 2023, the Third District affirmed. (*See id.* at PageID 142).

On May 30, 2023, representing himself, Mr. Lauck sought permission to file a delayed

application for reconsideration under Ohio Appellate Rule 26(A) along with the proposed

application. (*Id.* at PageID 190-95). In it, he argued that because the Third District "found that

there was evidence of other unindicted offenses to support potential predicate offenses for the

intimidation charge," a series of Third District cases require the court to conclude the indictment

against him was defective because it should have name those offenses and did not. (*See* ECF #7-1 at

PageID 194-95). On July 12, 2023, the Third District granted leave and denied the application on

the merits. (*Id.* at PageID 197-98). Representing himself, Mr. Lauck sought an appeal of the denial

to the Supreme Court of Ohio, but it declined jurisdiction on November 7, 2023. (*Id.* at PageID

199, 214; *see also State v. Lauck*, 220 N.E.3d 845 (Ohio 2023) (table)).

While his application for reconsideration was pending, Mr. Lauck, again representing

himself, appealed the Third District's decision to the Supreme Court of Ohio on May 31, 2023.

(*See* ECF #7-1 at PageID 153). He advanced one proposition of law:

4

Lauck's conviction for intimidation is unsupported by sufficient evidence in violation of the Fourteenth Amendment Due Process Clauses to the U.S. Constitution and the Ohio Constitution and is against the manifest weight of the evidence.

(*Id.* at PageID 171). On August 15, 2023, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 181; *see also State v. Lauck*, 214 N.E.3d 591 (Ohio 2023) (table)).

## C.    Delayed application to reopen the direct appeal

On August 24, 2023, representing himself, Mr. Lauck sought leave for a delayed application to reopen his direct appeal under Appellate Rule 26(B). (ECF #7-1 at PageID 215-17). He did not include proposed assignments of error in his filing. On October 25, 2023, the Third District denied leave. (*Id.* at PageID 218-19).

On November 22, 2023, Mr. Lauck sought an appeal to the Supreme Court of Ohio based on two propositions of law:

1.    Appellant Lauck argues that the Third District Court of Appeals abused its discretion in denying his motion for leave to file a delayed Application for Reopening

2.    Lauck contends that his appellate counsel was deficient because neither the July 6, 2021 indictment nor the December 13, 2021 Bill of Particulars identified the potential underlying predicates offenses for which Appellant Lauck was ultimately convicted and sentenced in violation of Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution

(*Id.* at PageID 233). On February 6, 2024, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 236; *see also State v. Lauck*, 226 N.E.3d 984 (Ohio 2024) (table)).

### FEDERAL HABEAS PETITION

Mr. Lauck raises three grounds for relief:

**GROUND ONE:** Lauck's conviction for intimidation is unsupported by sufficient evidence in violation of the Due Process Clauses of the U.S. Constitution and the Ohio Constitution and is against the manifest weight of the evidence.

**GROUND TWO:** Lauck argues that the State failed to prove his intent to intimidate

**GROUND THREE:** Appellant Lauck argues that neither the July 6, 2021 indictment nor the December 13, 2021 Bill of Particulars identified the potential underlying predicates offenses for which Appellant Lauck was ultimately convicted and sentenced in violation of Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution.

(ECF #1 at PageID 5-6, 8-9, 10).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Lauck's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

7

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**State-law Claims Not Cognizable on Federal Habeas Review**. Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

9

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an

adequate and independent state ground on which the state can bar review of the federal constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

**Excusing a Procedural Default.** A procedural default is not the end of a habeas claim. A petitioner can overcome a procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id*. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new, reliable evidence that was not presented at trial and is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Such evidence can include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Id*. But this evidence "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327

12

ANALYSIS

**A.       Procedural default of Ground Three**

The State argues Mr. Lauck procedurally defaulted Ground Three by not fairly presenting it in state court because he did not raise Ground Three until he appealed the denial of leave to file an application to reopen. (ECF #7-1 at PageID 48). Mr. Lauck responds that he raised Ground Three in his delayed motion for reconsideration and appealed the denial of that motion to the Supreme Court of Ohio. (ECF #12 at PageID 707).

As discussed above, a claim may be procedurally defaulted (thus barring habeas review) when the petitioner does not fairly present it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806; *see also Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by invoking "one complete round" of the state's appellate review system. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

Complicating the analysis is that Ground Three appears to contain two claims: (1) the indictment for intimidation and the bill of particulars violated the Ohio Constitution and the Sixth Amendment because they did not identify "the potential underlying predicate offenses" that the State would use to prove the "unlawful threat of harm" element of intimidation at trial (*see* ECF #1 at PageID 11; ECF #12 at PageID 712); and (2) appellate counsel was ineffective for not raising that issue on appeal (*see* ECF #1 at PageID 10-11).

The State argues Ground Three is procedurally defaulted in its entirety although the State's argument focuses exclusively on the ineffective-assistance claim. (*See* ECF #7 at PageID 48-51). At the same time, the State argues the merits of the substantive fair-notice claim and not the merits of the ineffective-assistance claim. (*See id.* at PageID 60-61).

I agree the ineffective-assistance claim is procedurally defaulted because Mr. Lauck did not raise it in his original Appellate Rule 26(B) application. But I recommend the District Court decline to address whether the substantive claim is procedurally defaulted because that determination would involve a nuanced analysis of state law while the substantive claim can be straightforwardly addressed on the merits and the State argued the merits.

1. **The District Court should decline to reach whether the substantive component of Ground Three is procedurally defaulted because it presents a complicated issue of Ohio law and the merits have been briefed by both parties.**

Determining whether Mr. Lauck procedurally defaulted the substantive fair-notice claim requires a nuanced analysis of Ohio law. Arguably, Mr. Lauck procedurally defaulted the substantive claim because he did not object to the constitutional validity of the indictment and the bill of particulars at trial or raise the issue on direct appeal. If a petitioner does not object to the sufficiency of an indictment at trial, then a habeas claim on that issue is procedurally defaulted. *See Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *see also State v. Brown*, 528 N.E.2d 523, 534 (Ohio 1988) ("Error that is not specifically objected to at trial is waived."). Similarly, a claim is procedurally defaulted if the claim was not, but could have been, raised on direct appeal. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *State v. Lentz,* 639 N.E.2d 784, 785 (Ohio 1994)). But the Third District did not apply those procedural rules, instead ruling on the merits of the claim in Mr. Lauck's application for reconsideration. (ECF #7-1 at PageID 198). Because the

14

Supreme Court of Ohio declined jurisdiction over his appeal, that is the only determination on the issue.

While the substantive claim is arguably procedurally defaulted for multiple reasons, it is not immediately clear whether the Third District's decision on the merits preserves the substantive claim for habeas review. A federal habeas court need not reach a procedural-default issue before deciding the merits of a claim. *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003). Such a determination would require an analysis of the procedural importance of the Third District's decision and applicable procedural bars under Ohio law. The District Court may instead proceed directly to the merits of the underlying claim, which the State and Mr. Lauck have each briefed. (*See* ECF #7 at PageID 60-61; ECF #12 at PageID 712-14). As a result, I opt to evaluate the merits of the claim rather than reaching a final determination on the default issue.

### 2. The ineffective-assistance claim within Ground Three is procedurally defaulted because Mr. Lauck did not raise it in his application to reopen before the Third District.

Turning to the ineffective-assistance claim within Ground Three, this claim is procedurally defaulted because Mr. Lauck did not raise it in his Rule 26(B) application before the Third District. As stated above, to have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston*, 282 F.Supp.2d at 661. And a petitioner must pursue "one complete round" of state appellate review before a claim can be brought in a federal habeas petition. *See Caver*, 349 F.3d at 346.

When Mr. Lauck sought permission to file a delayed application to reopen his direct appeal, he did not include Ground Three in his proposed assignments of error. (*See* ECF #7-1 at PageID 215-17). Mr. Lauck did include an argument laying out good cause for his untimely filing,

as required by Appellate Rule 26(B)(2)(a), but his application did not include any proposed assignments of error where he set out why his appellate counsel was ineffective. Appellate Rule 26(B)(2)(b) requires these be included. Mr. Lauck first argued his appellate counsel was ineffective when he appealed the denial of that application. (*Id.* at PageID 233). By raising the issue for the first time before the Supreme Court of Ohio and not the Third District, Mr. Lauck did not present his claim at "each and every level" of the Ohio courts. *See Baston*, 282 F.Supp.2d at 661. Thus, the ineffective-assistance claim within Ground Three is procedurally defaulted.

As mentioned above, to avoid procedural default, Mr. Lauck must demonstrate cause for the default and actual prejudice. *Coleman*, 501 U.S. at 750. He does not do so anywhere in his Traverse. (*See* ECF #12). Nor does he argue the merits of his ineffective-assistance claim. Although Mr. Lauck's filings are entitled to a liberal construction as a pro se pleading, I am not required to scour the record and invent arguments demonstrating cause for him when he does not do so. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction [of a pro se petitioner's pleadings] does not require a court to conjure allegations on a litigant's behalf").

I thus recommend the District Court **DISMISS** the ineffective-assistance claim within Ground Three as procedurally defaulted.

**B.    Merits review of remaining grounds**

    **1.    Ground One lacks merit because sufficient evidence existed showing Mr. Lauck made an unlawful threat of harm that intimidated Deputy Ritter while he discharged his official duties.**

In Ground One, Mr. Lauck argues his "conviction for intimidation is unsupported by sufficient evidence in violation of the Due Process Clauses of the U.S. Constitution and the Ohio Constitution and is against the manifest weight of the evidence." (ECF #1 at PageID 5). In his supporting facts and his Traverse, he argues there was insufficient evidence that he made an

16

unlawful threat of harm that influenced Deputy Ritter in the discharge of his duties. (*See id.* at PageID 6; ECF #12 at PageID 710). The State responds that the Third District's decision on the issue in Mr. Lauck's direct appeal is entitled to AEDPA deference and it reasonably rejected his arguments. (ECF #7 at PageID 58-59).

At the outset, I note Mr. Lauck argues his conviction was against the manifest weight of the evidence. A federal habeas court cannot hear manifest-weight claims because such claims are grounded in state law for which habeas relief does not lie. *See Walker*, 703 F.2d at 969. Nothing more need be said about this aspect of Ground One.

Turning to the sufficiency-of-the-evidence claim, a conviction is not supported by sufficient evidence if "a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This inquiry focuses on "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

But a federal habeas court does not conduct a de novo review of the Ohio court's application of that rule. *Nash v. Eberlin*, 258 F.App'x 761, 765 (6th Cir. 2007). A federal habeas court must review the state court's determination whether the evidence was sufficient through the highly deferential standard AEDPA requires. *Id.* Under AEDPA, Mr. Lauck is entitled to habeas relief only if the Third District unreasonably applied the *Jackson* standard. *See* 28 U.S.C. § 2254(d)(1); *see also Nash*, 258 F.App'x at 765. Thus, the District Court must determine whether it was objectively unreasonable for the Third District to conclude that a rational trier of fact, after viewing the evidence against Mr. Lauck in the light most favorable to the prosecution, could have

found Mr. Lauck committed the essential elements of intimidation beyond a reasonable doubt. *See Nash*, 258 F.App'x at 765.

This determination asks two questions. First, was the evidence against Mr. Lauck sufficient to convict under *Jackson*? *See Saxton v. Sheets*, 547 F.3d 597, 601-02 (6th Cir. 2008). If yes, the inquiry ends. *Id.* If no, then the court must ask was the Third District objectively unreasonable in concluding a rational trier of fact could have found Mr. Lauck guilty beyond a reasonable doubt? *See id.*

The Third District summarized the essential elements of Ohio's offense of intimidation:

A) No person, knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the person's * * * duties of the public servant, party official, attorney, or witness.

(ECF #7-1 at PageID 146-47) (quoting Ohio Rev. Code § 2921.03(A)) (ellipses in original). In Ground One, Mr. Lauck argues there was insufficient evidence that he (1) made an "unlawful threat of harm," and (2) the threat "influence[d], intimidate[d], or hinder[ed]" Deputy Ritter's discharge of his official police duties. (*See* ECF #1 at PageID 5-6; ECF #12 at PageID 710). I analyze each in turn.

**Unlawful threat of harm.** Mr. Lauck first argues he did not make an "unlawful threat of harm" to Deputy Ritter by retrieving, holding, and discharging his shotgun because "it is not illegal in Ohio to own a shotgun, or openly carry a shotgun, or hold a shotgun while one is on private property." (ECF #1 at PageID 6).

The Ohio Supreme Court has held that an "unlawful threat" must be "more than just a threat, *i.e.*, more than just a communication to a person that particular negative consequences will

18

follow should the person not act as the communicator demands." *State v. Cress*, 858 N.E.2d 341, 346 (Ohio 2006). Therefore, "the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id.*

Unlawful threats of harm ordinarily are specific, verbal threats of harm. *See Ball v. Houk*, No. 1:05 CV 2120, 2007 WL 4556676, at *17 (N.D. Ohio 2007) (sufficient evidence of unlawful threat of harm where habeas petitioner repeatedly threatened to stab the victim or slit the victim's throat). But conduct that is an implied or indefinite threat can still be an unlawful threat of harm. *See State v. Hayes*, No. 104818, 2017 WL 4176960, at *6 (Ohio Ct. App. Sept. 21, 2017) (sufficient evidence of threat where defendant asked a witness about what she saw, referenced a television show that "out[ed] snitches," and passed by the witness several times while displaying a firearm when the defendant was legally prohibited from owning a firearm).

Viewing the evidence in the light most favorable to the prosecution (as *Jackson* requires), a rational trier of fact could reasonably conclude Mr. Lauck made a threat of harm to Deputy Ritter by retrieving, racking, and discharging his shotgun in Deputy Ritter's presence. Deputy Ritter observed Mr. Lauck enter the garage and saw him holding a shotgun. (ECF #7-5 at PageID 362-63). Deputy Ritter immediately sought cover. (*Id* at PageID 363). He described feeling "scared, intimidated, nervous" and stated he "knew that there was an imminent threat." (*Id.*). He then heard Mr. Lauck "rack" the shotgun[2] and, while Deputy Ritter ran for cover, heard a shotgun fire.

---

[2]        "Rack" and "racking" were used throughout Mr. Lauck's trial to describe the manual operation of the sliding handguard on Mr. Lauck's pump-action shotgun to clear the shotgun's chamber and load a new cartridge. (*See* ECF #7-5 at PageID 365; ECF #7-6 at PageID 471-72)

(*Id.* at PageID 363-64). Deputy Ritter then heard the shotgun be re-racked (*Id.* at PageID 365) and saw Mr. Lauck leave the garage holding the shotgun at a "high-ready position," which he described as an "in-between position" where the butt was "shouldered" but Mr. Lauck was not in a shooting position. (*Id.* at PageID 365-66). Detective Sergeant Seem testified that any encounter with a person armed with a shotgun is dangerous, even when the shotgun is low to the ground. (ECF #7-8 at PageID 558). He also estimated it takes less than a second to move from a "low-ready position" to a "firing position." (*Id.*). A rational trier of fact could reasonably infer from this evidence that Mr. Lauck threatened Deputy Ritter with imminent bodily harm when Mr. Lauck retrieved, racked, discharged (he claims accidentally), and re-racked the shotgun and then exited the garage holding the shotgun with its butt to his shoulder—all within view or earshot of Deputy Ritter.

But the crux of Mr. Lauck's argument is there was not sufficient evidence that any threat made was unlawful because it is not illegal to "own a shotgun, or openly carry a shotgun, or hold a shotgun while one is on private property." (ECF #1 at PageID 6). Mr. Lauck is correct that under Ohio law, an unlawful threat of harm has to be something more than just a threat of harm. *See Cress*, 858 N.E.2d at 346. To be an *unlawful* threat of harm, "the very making of the threat" must be "itself unlawful because it violates established criminal or civil law." *Id.*

Again viewing the evidence in the light most favorable to the prosecution (as I must), a rational trier of fact could reasonably conclude Mr. Lauck's operation of the shotgun in Deputy Ritter's presence was itself unlawful. The Third District noted the threat was unlawful because in making the threat, Mr. Lauck carried and used a firearm while under the influence of alcohol, a first-degree misdemeanor under Ohio Revised Code § 2923.15, which prohibits any "person,

20

while under the influence of alcohol or any drug of abuse," from "carry[ing] or us[ing] any firearm or dangerous ordnance."[3] (*See* ECF #7-1 at PageID 148).

There was sufficient evidence for a rational trier of fact to conclude Mr. Lauck used and carried a firearm while under the influence of alcohol. It is unquestioned that Mr. Lauck carried and used a shotgun. There was also ample evidence he was intoxicated that night. "Evidence that the accused admitted to consuming alcohol and exhibited physical indicia of intoxication such as glassy or bloodshot eyes, slurred speech, staggering, swaying, and the odor of alcohol on the accused's breath or person are sufficient to prove intoxication" for the purposes of Revised Code § 2923.15. *See State v. Hughes*, 238 N.E.3d 234, 240 (Ohio Ct. App. Mar. 15, 2024).

Deputy Ritter observed Mr. Lauck slurring his speech and smelling of an alcoholic beverage that day. (ECF #7-5 at PageID 361). Deputy Otto observed "some slurred speech," "the odor of an alcoholic beverage" on Mr. Lauck's breath, and Mr. Lauck having "kind of like glassy, bloodshot eyes." (ECF #7-6 at PageID 432). In addition to these physical signs, after Mr. Lauck was arrested, he told the paramedic who treated him that he drank a pint of Jack Daniel's whiskey over the course of that day. (ECF #7-6 at PageID 441). Mr. Lauck also later stated to a Hancock County Department of Job and Family Services investigator that he was intoxicated that day. (ECF #7-7 at

---

[3]      The Third District also noted the threat was unlawful because Mr. Lauck used the shotgun with the purpose of preventing or obstructing Deputy Ritter from performing his lawful duties while creating a risk of physical harm, a fifth-degree felony under Revised Code § 2921.31. (*See* ECF #7-1 at PageID 148-49). Mr. Lauck argues he did not influence, intimidate, or hinder Deputy Ritter (*see* ECF #12 at PageID 709-10) and that argument also goes to whether the threat violated § 2921.31. Because I conclude there was sufficient evidence for a rational trier of fact to conclude Mr. Lauck used a weapon while intoxicated, I do not address this alternate rationale for why the threat was itself unlawful.

PageID 529-30). From this evidence, a rational trier of fact could reasonably conclude Mr. Lauck used and carried his shotgun while under the influence of alcohol. *Hughes*, 238 N.E.3d at 240.

Mr. Lauck argues in Ground Three that this evidence cannot be used against him because the indictment and the bill of particulars do not charge him with using a weapon while intoxicated. (ECF #12 at PageID 713-14). I address Ground Three on its own merits in greater depth below. As it relates to Ground One, the bill of particulars stated, "[t]hereafter, at approximately 7:42 p.m., the defendant, while intoxicated, armed himself with a shotgun, brandished it at, and fired it at Deputy Ritter." (ECF #7-1 at PageID 252). This put Mr. Lauck on fair notice that he may have to defend against these allegations at trial.

Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably conclude that (1) Mr. Lauck made a threat of harm to Deputy Ritter by retrieving, racking, and discharging his shotgun in Deputy Ritter's presence, and (2) the threat was itself unlawful because Mr. Lauck used a shotgun while under the influence of alcohol, a first-degree misdemeanor in Ohio.

**Influencing, intimidating, or hindering Deputy Ritter's discharge of his duties.** Next, Mr. Lauck argues there was insufficient evidence that he influenced, intimidated, or hindered Deputy Ritter in the discharge of duties as a public servant because Deputy Ritter had completed his domestic-violence investigation by the time Mr. Lauck had retrieved the shotgun and the deputy was "just out there buying time." (*See* ECF #12 at PageID 709-10; *see also* ECF #1-1 at PageID 17; ECF #7-5 at PageID 380). This argument presupposes that Deputy Ritter's sole duty as a deputy sheriff was to investigate a potential crime and nothing else. In fact, his duties were far

broader and included locating and arresting Jase Lauck, Mr. Lauck's son, after he completed his investigation.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably conclude when Mr. Lauck operated the shotgun, Deputy Ritter was still discharging his duty as a sheriff's deputy to investigate, locate, and arrest Jase Lauck. Deputy Ritter and other officers were searching for Jase Lauck to potentially arrest him for a domestic-violence at Mr. Lauck's home. (*See* ECF #7-5 at PageID 372). By the time Deputy Ritter arrived, Jase had fled into the cornfields so Deputy Ritter chased after Jase while other officers set up a perimeter around the cornfield. (*Id.* at PageID 358-59). While other officers handled the search, Deputy Ritter was tasked with investigating the domestic-violence incident at the Lauck residence. (*Id.* at PageID 359). But Deputy Ritter remained a part of the perimeter, watching if Jase returned to the residence. (*Id.*). Prior to Mr. Lauck retrieving the shotgun, Deputy Ritter described, "my investigation to the domestic concluded. I believed I had enough probable cause to arrest Jase for domestic violence, and my focus shifted to perimeter control." (*Id.* at PageID 361). He later testified he heard Mr. Lauck go into the garage "[a]fter a couple minutes of watching the western edge of the cornfield." (*Id.* at PageID 362). Based on this evidence, a rational trier of fact could reasonably conclude that while the domestic-violence investigation had concluded, Deputy Ritter remained on perimeter control as a part of the search for Jase Lauck and was thus still discharging his duties as a sheriff's deputy the time Mr. Lauck went into the garage.

Because there was sufficient evidence for a rational trier of fact to reasonably conclude Mr. Lauck made an unlawful threat of harm that intimidated Deputy Ritter during the discharge of his official duties, I recommend the District Court **DENY** Ground One as meritless.

2.    **Ground Two lacks merit because it asks the District Court to re-weigh the evidence and there was sufficient evidence that Mr. Lauck acted knowingly.**

In Ground Two, Mr. Lauck asserts "the State failed to prove his intent to intimidate." (ECF #1 at PageID 8). His argument rests on the proposition that "[w]here there are two equal inferences, there is no sufficient competent, credible evidence to permit reasonable minds to fund guilt beyond a reasonable doubt." (*Id.* at PageID 9). As applied to his case, he says there were "two competing inferences: One, Mr. Lauck intended to intimidate Deputy Ritter. Two, Mr. Lauck was inebriated and in his own garage handling a shotgun" as there was no direct evidence of his intent to intimidate. (*See id.* at PageID 8-9; ECF #12 at PageID 711). The State responds that the Third District's decision on the issue in Mr. Lauck's direct appeal is entitled to AEDPA deference and it reasonably found sufficient evidence of intent. (ECF #7 at PageID 58-59).

As discussed regarding Ground One, to analyze a claim that a conviction is not supported by sufficient evidence, a court looks for "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Ground Two lacks merit and has been rejected by the Supreme Court and the Sixth Circuit. Mr. Lauck's argument that there was "an equal inference [] that the gun accidentally discharged" (ECF #1 at PageID 8-9) requires the Court to weigh competing inferences as if it was a juror. *Jackson* bars federal courts from asking "itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). Instead, *Jackson* requires a reviewing court to view the evidence "in the light most favorable to the prosecution." *Id.* Applying that standard to resolving equal competing inferences, the Sixth Circuit has held that "a federal habeas corpus court faced with a record of historical facts that supports

24

conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker*, 703 F.2d at 969. Thus, the federal court cannot independently determine whether it believes Mr. Lauck intended to intimidate Deputy Ritter or that the shotgun was fired in a drunken accident. Rather, it must accept the inference that Mr. Lauck intended to intimidate Deputy Ritter because it supports the prosecution.

For the same reasons, Mr. Lauck's reliance on *State v. Bowshier*, 853 N.E.2d 1210, 1216 (Ohio Ct. App. June 2, 2006), is misplaced. In *Bowshier*, the Second District analyzed a claim that the appellant's conviction was against the manifest weight of the evidence, not the sufficiency of the evidence. *See id.* at 1216 (citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)). But, as mentioned above, federal courts may not hear manifest-weight claims on federal habeas review. *See Walker*, 703 F.2d at 969. Thus, federal courts cannot engage in the type of analysis used in *Bowshier*; rather, the court must follow *Jackson* and *Walker* and make all reasonable inferences in favor of the prosecution.

Moreover, there was sufficient circumstantial evidence of Mr. Lauck's intent to intimidate without a direct statement of his intent. Ohio's intimidation statute requires a person act knowingly to commit the crime of intimidation. Ohio Rev. Code § 2921.03(A). Ohio law defines "knowingly" as the following: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." Ohio Rev. Code § 2901.22(B). Purpose or intent can be established by circumstantial evidence from the surrounding facts and circumstances in the case. *See State v. Jenks*, 574 N.E.2d 492, 501-02 (Ohio 1991).

The evidence at trial described Mr. Lauck's escalating attempts to get rid of Deputy Ritter and that he was aware his conduct would "probably cause" Deputy Ritter to be intimidated. Deputy Ritter and other officers were investigating Jase Lauck, Mr. Lauck's son, for domestic violence. (*See* ECF #7-5 at PageID 372). Early in Deputy Ritter's investigation, Mr. Lauck shouted at witnesses regarding Deputy Ritter to "get that retard out of here, or you're gone." (*Id.* at PageID 360). Deputy Ritter had to order Mr. Lauck multiple times "to stay back, keep his distance, stop interrupting my investigation, please stop obstructing." (*Id.*). Mr. Lauck grew angry and entered the garage, started an ATV, and drove at "a rapid speed" directly where Deputy Ritter was standing interviewing witnesses. (*Id.* at PageID 361). Deputy Ritter unhooded his weapon, successfully ordered Mr. Lauck off the ATV, and then ordered Mr. Lauck to stay on the front porch. (*Id.* at PageID 361-62). A few minutes later, Mr. Lauck went into the garage, retrieved, racked, fired and re-racked his shotgun, and walked out. (*Id.* at PageID 362-65). Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably conclude Mr. Lauck retrieved the shotgun and racked it for the same reason he shouted at witnesses and started his ATV and drove it at Deputy Ritter: as part of an escalating effort to interfere with Deputy Ritter's investigation into Jase Lauck by forcing him to leave the premises under compulsion.

Because Ground Two requires the District Court re-weigh competing inferences in violation of *Jackson* and there was sufficient evidence for a rational trier of fact to conclude Mr. Lauck acted knowingly, I recommend the District Court **DENY** Ground Two as meritless.

> **3.**    **Ground Three lacks merit because the indictment and bill of particulars gave Mr. Lauck fair notice of the intimidation charge under the Sixth Amendment.**

As discussed above, Ground Three raises a substantive claim that the indictment against Mr. Lauck and the subsequent bill of particulars did not identify "the potential underlying

predicate offenses" that would support the unlawful-threat-of-harm element of intimidation in violation of the Sixth Amendment, the Ohio Constitution, and Ohio Criminal Rule 7(B). (*See* ECF #1 at PageID 11; ECF #12 at PageID 712).

Mr. Lauck's arguments that the indictment and bill of particulars violate the Ohio Constitution, Criminal Rule 7(B), and the state cases he cites in support do not entitle him to federal habeas relief. (*See* ECF #12 at PageID 712-14). As noted above, federal habeas relief is available only for a "violation of the Constitution or law or treaties of the United States" and is not available for a violation of Ohio criminal procedure. *See* 28 U.S.C. § 2254(a). The violation of the right to an indictment under Ohio law, and all its accompanying procedural safeguards, does not automatically implicate a federal constitutional violation. *Lane v. Coleman*, No. 3:11-CV-1178, 2014 WL 849179, at *17 (N.D. Ohio Mar. 4, 2014).

Though Mr. Lauck mentions the Sixth Amendment in Ground Three, he argues only a state-law claim. (*See* ECF #12 at PageID 713) ("It is clear that under Ohio law that indictment must state the charged offense in language or statute Crim. R. 7(B)." [*sic*]). In his Traverse, he cites only Ohio cases to support his argument. He first cites *State v. Kirk*, Nos. 95260 & 95261, 2011 WL 1326282, at *6-7 (Ohio Ct. App. Apr. 7, 2011), to argue "Indictment for intimidation, defective from outset, as state may not rely on suggestion to prove a predicate offense." (*sic*) (ECF #12 at PageID 713). However, the Eighth District in *Kirk* concluded the indictment for intimidation was defective under Ohio law, not federal law:

> In his fourth assignment of error, Kirk argues that the trial court erred in denying his motion for acquittal as to the charge of intimidation. He contends that the evidence in the record established neither the victim nor the predicate offense as required by R.C. 2921.04(B). In light of the Ohio Supreme Court's decision in *State v. Malone,* 121 Ohio St.3d 244, 2009-Ohio-310, 903 N.E.2d 614, this court must agree.

*Kirk*, 2011 WL 1326282 at *6. *Kirk* does not mention federal law anywhere. Moreover, the court in *Kirk* concluded the indictment was defective because "[i]t did not contain a named victim" not because it did not specify a predicate offense or how the threat of harm was unlawful. *Id.* at *7.

Mr. Lauck also cites *State v. Muniz*, No. 93528, 2010 WL 3169268 (Ohio Ct. App. Aug. 12, 2010), to argue "the State's failure to give notice of predicate act in indictment render it defective from the outset and therefore fatal to conviction." (ECF #12 at PageID 713). While *Muniz* does hold that a defendant charged with intimidation "is entitled to notice of the predicate crime in the indictment," it does not interpret federal law or set out a federal right to notice of the predicate crime. *See Muniz*, 2010 WL 3169268, at *4.

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Corcoran*, 562 U.S. at 5. Only noncompliance with federal law can entitle Mr. Lauck to habeas relief, but he has argued only a violation of Ohio law. This is not on its own a violation of federal law. *See Lane*, 2014 WL 849179, at *17. At no point has Mr. Lauck explained how his indictment violated the Sixth Amendment to entitle him to habeas relief.

Nor does there appear to be a federal constitutional violation. In relevant part, the Sixth Amendment provides "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. A state defendant's right to fair notice of and an opportunity to defend from criminal charges is also protected by the Due Process Clause of the Fourteenth Amendment. *See Jackson*, 443 U.S. at 314. In the habeas context, "due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz*, 731 F.2d at 369). Fair notice has been given

when "the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial." *Koontz*, 731 F.2d at 369.

Here, the indictment listed the charged offenses and the firearm specifications with citations to the Ohio Revised Code, identified the victim, the date and location of the offense, and the firearm used. (ECF #7-1 at PageID 68-69). Notably, the indictment stated Mr. Lauck did "knowingly and . . . by unlawful threat of harm" attempt to intimidate Deputy Ritter. (*Id.* at PageID 69). By both stating the offenses with which Mr. Lauck was charged and using the Ohio Revised Code section numbers, the indictment provided Mr. Lauck fair notice of the charges against him. *Williams*, 467 F.3d at 535-36 (finding fair notice where indictment stated offenses, though it did not state the exact intent requirement); *Lane*, 2014 WL 849179, at *18 (same where "the indictment expressly enumerated the relevant sections of the Ohio Revised Code").

The bill of particulars repeated the indictment and added a narrative description of the alleged facts surrounding the intimidation charge, including an express description that Mr. Lauck used a firearm while intoxicated:

> More specifically, on August 26, 2020, at approximately 6:59 p.m., Deputy Justin Ritter of the Hancock County Sheriff's Office, responded to the defendant's property at 16091 CR 8 in Jackson Township, in Hancock County, Ohio, for a domestic violence call between the defendant's son, Jase Lauck, and the mother of Jase's child, Sarah Garrad. During this time as Deputy Ritter, a peace officer, was in uniform and operated a marked sheriff's cruiser as he was investigating the domestic violence call. Jase Lauck fled from the residence and into a nearby cornfield. Law enforcement began searching for Jase. The defendant, Ronald Dean Lauck, grew frustrated and angry that law enforcement were on his property. He repeatedly interfered with the investigation verbally, approaching Deputy Ritter and the witnesses he was attempting to interview despite being instructed on multiple occasions to stop interfering with the investigation and to return to designated areas.
>
> For example, while Deputy Ritter was interviewing Sarah Garrad, the domestic violence victim, the defendant shouted at her to think about what she was doing.

29

Also, when Deputy Ritter was interviewing Rashae Lauck, the defendant's adult daughter who lived at 16091 CR 8, the defendant shouted, "Rashae you get that retard out of here or else you are gone." Despite being told to stay back on multiple occasions, the defendant even rode back to where the witnesses were being interviewed on a 4x4-type vehicle during the investigation and drove this vehicle towards Deputy Ritter. The defendant demanded to talk with Sgt. Thomas Miller of the Hancock County Sheriff's Office now and when Deputy Ritter advised the defendant that Sgt. Miller was unavailable, the defendant threatened to call 9-1-1 to demand that Sgt. Miller come to the scene and speak with him. *Thereafter, at approximately 7:42 p.m., the defendant, while intoxicated, armed himself with a shotgun, brandished it at, and fired it at Deputy Ritter of the Hancock County Sheriff's Office.* Deputy Ritter returned fire as the defendant was observed drawing the shotgun up again before the defendant was secured by law enforcement.

Additionally, in his recorded interview with Det. Sgt. Seem when asked why he had his gun out, the defendant stated, "he was thinking it was his house and they [law enforcement] had their guns so I figured I'd get mine." Moreover, in a recorded statement to Det. Sgt. Seem and Det. Robin May on August 27, 2020, the defendant's adult daughter, Rashae Lauck, advised that when "Dean" [the defendant] shot at the ground he stated, "I told you guys to get off the property."

(ECF #7-1 at PageID 251-52) (emphasis added). Thus, the bill of particulars gave Mr. Lauck actual notice that he may have to defend himself from the State alleging he used a shotgun while intoxicated. Armed with all this information, Mr. Lauck was given fair notice of the charges against him to permit adequate preparation of his defense.

I thus recommend the District Court **DENY** Ground Three as meritless.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving

a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Mr. Lauck has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are meritorious federal constitutional claims or are procedurally defaulted. I thus recommend the District Court **DENY** Mr. Lauck a COA for all grounds of his petition.

#### CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the portion of Ground Three arguing ineffective assistance of counsel as procedurally defaulted; **DENY** Ground One, Ground Two, and the remainder of Ground Three as meritless; and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Lauck a certificate of appealability on all grounds.

Dated: March 31, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).